**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| AYOKA DURHAM, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 23-cv-03490-LKG |
| ) | |
| v. ) | Dated:  December 3, 2024 |
| ) | |
| HOME PARTNERS HOLDINGS LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

In this putative class action, the Plaintiffs, Ayoka and Marcus Durham, bring claims, on behalf of themselves and similarly situated individuals, against the Defendants, Home Partners Holdings, LLC ("Home Partners"), OPVHHJV, LLC, d/b/a Pathlight Property Management ("Pathlight"), SFR Borrower 2022-1, LLC  ("SFR") and HP Maryland I, LLC ("HP Maryland I"), arising from their rental of certain property owned, leased and/or managed by the Defendants, for violations of the Maryland Consumer Protection Act (the "MCPA"), Md. Code Ann., Com. Law § 13-102; Md. Code Ann., Real Prop. § 8-208 ("Section 8-208"); Md. Code Ann., Real Prop. § 8-211 ("Section 8-211"); and breach of the duty of good faith and fair dealing; rescission; unjust enrichment; declaratory relief; and injunctive relief.  *See generally* ECF No. 1.  The Defendants have moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 27.  This motion is fully briefed.  ECF Nos. 27, 45, 51, 53, 55, 56, 57 and 58. No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS** the Defendants' motion to dismiss and (2) **DISMISSES** the complaint.

1

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A.    Factual Background

In this putative class action, the Plaintiffs bring claims against the Defendants arising from their rental of property owned, leased and/or managed by the Defendants for: (1) violations of the MCPA (Count I); (2) violations of Section 8-208 (Count II); (3) violations of Section 8-211 (Count III); (4) breach of the duty of good faith and fair dealing (Count IV); (5) rescission (Count V); (6) unjust enrichment (Count VI); (7) declaratory relief (Count VII); and (8) injunctive relief (Count VIII).  *See generally* ECF No. 1.  As relief, the Plaintiffs seek, among other things, certain declaratory and injunctive relief, and to recover monetary damages and attorneys' fees and costs from the Defendants.  *Id.* at Prayer for Relief.

<u>The Parties</u>

The Plaintiffs, Ayoka and Marcus Durham, are citizens of Maryland.  ECF No. 1 at ¶ 13.

Defendant Home Partners is a limited liability company organized in Delaware, with its principal place of business located in Chicago, Illinois.  *Id.* at ¶ 14.

Defendant Pathlight is a limited liability company organized in Texas, with its principal place of business located in Plano, Texas.  *Id.* at ¶ 15.

Defendant HP Maryland I is a limited liability company organized in Delaware, with its principal place of business in Chicago, Illinois.  *Id.* at ¶ 16.

Defendant SFR is a limited liability company organized in Delaware, with its principal place of business located in Chicago, Illinois.  *Id.* at ¶ 19.

Defendants Pathlight, HP Maryland I, LLC and SFR are affiliates of Defendant Home Partners.  *See* ECF No. 1 at ¶¶ 15-20.

<u>The Defendants' "Right-To-Purchase" Program</u>

As background, the Defendants are landlords who own, lease and/or manage approximately 17,000 homes in over 80 markets across the United States.  *Id.* at ¶ 1.  The

---

[1] The facts recited in this memorandum opinion and order are derived from the complaint; the Defendants' motion to dismiss; and the memorandum in support thereof.  ECF Nos. 1 and 27.  Unless otherwise stated, the facts are undisputed.

Defendants provide individuals who are not yet ready to purchase a home with the opportunity to live in a home, pursuant to a "right-to-purchase" program (the "Right-to-Purchase Program"). *Id*. at ¶ 3. As part of the Right-to-Purchase Program, the Defendants agree to handle large service maintenance requests for the homes that they lease. *Id*. at ¶¶ 4, 43 and 47.

The Plaintiffs allege in the complaint that the Defendants violated the MCPA and other state laws each time they used a form lease agreement to rent homes in Maryland pursuant to the Right-to-Purchase Program. *See generally* ECF No. 1. And so, the Plaintiffs seek to recover damages from the Defendants for their alleged unfair and misleading trade practices and use of illegal lease provisions. *Id*. at Prayer for Relief.

<u>The Lease</u>

The Plaintiffs have entered into a lease agreement with Defendants (the "Lease") to rent a property located at 6290 Cracklingtown Road, Hughesville, Maryland. ECF No. 1-6. This Lease governs the rental of the Plaintiffs' home under the Right-to-Purchase Program. *Id*.

Relevant to the pending motion to dismiss, paragraph 3 of the Lease addresses the term of the Plaintiffs' Lease and provides, in relevant part, that:

> **LEASE TERM**. Subject to the terms and conditions of this Lease, the Right to Purchase Agreement, any other written agreements among the parties pertaining to the Premises, Landlord hereby leases to Tenant and Tenant hereby leases from Landlord, for use as a private, single family dwelling/residence only, the Premises commencing on the Commencement Date and ending on the Expiration Date.

*Id*. at 9. Paragraph 4 of the Lease, which is entitled "Rent And Late Charges," addresses the payment of rent and provides, in relevant part:

> **RENT AND LATE CHARGES.** Tenant agrees to pay to Landlord the Monthly Base Rent together with any Additional Rent in advance, and without demand, on or before 11:59 p.m. on the first day of every month during the Term at the address contained herein for payment of Rent (or such other address as Landlord may designate in writing to Tenant) or pursuant to an online rent payment system designated by Landlord or Landlord's Agents).
>
> [. . . ]
>
> If any portion of any required Rent payment is not received by Landlord on or before five (5) days from the date when due

> including any Returned Payment (each such unpaid amount, an "Overdue Payment Amount"), then Tenant shall pay to Landlord, in addition to such Overdue Payment Amount, a "late fee" in the amount of five percent (5%) of the applicable Overdue Payment Amount (not to exceed the maximum late fee permitted by Applicable Law) (each, a "Late Payment Fee") to cover administrative expenses for the late payment.
>
> [. . .]
>
> Timely payment of all sums due under this Lease by Tenant is an independent covenant of each and every other covenant of this Lease. Tenant agrees that it shall not have the right to deduct, withhold or offset any portion of the Rent from any claim it may have against Landlord, in any action by Tenant, except to the extent expressly authorized by Applicable Laws. Regardless of any notation or restrictions on a check or money order, all sums received by Landlord from Tenant shall be applied to the oldest outstanding monetary obligation owed by Tenant to Landlord (except if Applicable Law requires that it be applied in a different order).

*Id*. at 10-11.

The Lease also contains provisions regarding the condition of the rental property. In this regard, paragraph 10 of the Lease, which is entitled "Move-In Condition Of Premises," provides, in relevant part, that:

> Except for the covenants of Landlord expressly contained in this Lease or other documents executed by Landlord, or as otherwise required or specified by Applicable Laws, Tenant agrees that (a) it is leasing the Premises in its "AS-IS, WHERE-IS, WITH ALL FAULTS" condition as of the Effective Date and specifically and expressly without any warranties, representations or guarantees, either express or implied, as to its condition, fitness for any particular purpose, merchantability or any other warranty of any kind, nature, or type whatsoever from or on behalf of Landlord, and (b) except as may be required by Applicable Laws, Landlord has no obligation to perform any work, supply any materials, incur any expense or make any alterations or improvements to any portion of the Premises.

*Id*. at 14. In this regard, paragraph 2 of the Lease defines "Applicable Laws" to mean "statutes, rules, regulations and orders of any and all governmental or quasi-governmental authorities or bodies applicable to the Premises." *Id*. at 8. The Lease also defines "Premises" to mean "the real property . . . having a street address as 6290 Cracklingtown Road, Hughesville, MD[.]" *Id*.

In addition, paragraph 16 of the Lease addresses the maintenance and repair of the rental property and provides, in relevant part, that:

> **MAINTENANCE AND REPAIR.**  Subject to the terms of this Section . . . , Landlord shall use reasonable efforts to maintain, at its cost . . . (2) any items which are required by Applicable Laws to be maintained by Landlord . . .
>
> **Tenant shall, at Tenant's expense, maintain the Premises (including all appliances, systems and fixtures located thereon but excluding only those items which are required to be maintained by Landlord)** and keep same in a clean, safe and healthy condition and in good working order, at all times during the Term, and shall suffer no waste therein, and shall be responsible for payment of the cost of (a) all repairs, maintenance or replacement required to the Premises, including the walls, windows, storms doors/windows and screens, ceilings, paint, plastering, plumbing work, pipes, appliances and fixtures belonging to the Premises, **whenever such damage or injury to the same shall have resulted from misuse, waste or neglect by any Occupant**, and (b) any and all repairs, maintenance or replacement required to the Premises that shall be necessary to restore the Premises to the same condition as when Tenant took possession of the Premises (including any work performed by Landlord thereafter), normal wear and tear excepted.
>
> [. . .]
>
> **The amount of Rent was agreed upon based on the express understanding that Tenant will be responsible for the maintenance needs of the Premises as provided in this Lease and in the absence of Tenant's agreement to maintain the Premises at its cost in accordance with the terms of this Lease, Landlord would have charged a higher rent amount.**

*Id*. at 16-17 (Emphasis in original).  Lastly, paragraph 23 of the Lease contains an indemnification provision, which provides, in relevant part, that:

> To the extent permitted by Applicable Laws, Tenant shall indemnify, protect, defend and hold Landlord Indemnitees harmless from any and all Claims associated with any injury or harm to any person or property occurring on or about the Premises including but not limited to any breach by Tenant of this Lease and/or any damage or liability caused by any Occupant during the Lease Term, except to the extent that the injury or harm is caused by gross negligence on the part of Landlord; provided, however, nothing contained in this Lease shall require indemnification prohibited by Applicable Law.

*Id*. at 20.

<u>The Plaintiffs' Allegations</u>

The Plaintiffs allege in the complaint that they have been subjected to the Defendants' deceptive trade practices, misrepresentations and omissions, as a result of their participation in the Right-to-Purchase Program. *See generally* ECF No. 1. Specifically, the Plaintiffs allege that they entered into the Lease with the Defendants, based upon the Defendants' false and misleading representations provided in: (1) a marketing campaign for the Right-to-Purchase Program; (2) certain statements made on the Defendants' websites; and (3) certain provisions contained in an "Anticipated Terms" document. *Id*. at ¶¶ 26-56. And so, the Plaintiffs contend that they have suffered numerous injuries flowing from the Defendants' alleged misrepresentations and/or omissions and inducements to enter into the Lease. *Id*. at ¶¶ 112, 115-116, 147 and 149.

With regards to their MCPA claim in Count I of the complaint, the Plaintiffs allege that the Defendants made two types of material misrepresentations and/or omissions in connection with the Right-to-Purchase Program. *Id*. at ¶¶ 26-95. First, the Plaintiffs allege that the Defendants made certain material misrepresentations and/or omissions through their advertising materials and certain statements on their websites, including that: (1) the Defendants "expend significant effort and resources to purchase a particular home on the prospective tenant's behalf[;]" (2) the homes available for rent are "[p]rofessionally managed by Pathlight Property Management, the exclusive property manager for Home Partners of America, offering excellent customer service, 24/7 emergency maintenance service, online application and payments, and pet-friendly options[;]" and (3) the homes are "qualified," "move-in ready" and have passed inspection. *Id*. at ¶¶ 42-44. The Plaintiffs also allege that the Defendants made certain misrepresentations and/or omissions in an "Anticipated Terms" document that the Defendants provide to tenants before signing the Lease, including: (1) representations regarding the terms of the Lease and certain fees; (2) statements that tenants are responsible for utilities, such as water, trash and sewer, lawn and landscape maintenance, snow/ice removal and "other day-to-day maintenance[;]" (3) statements that the Defendants expect tenants to "maintain the home as if it were the tenants' own" and that tenants are required to maintain their own general liability renters' insurance; and (4) a failure to disclose that tenants may later be force-placed into the

Defendants' own insurance program if they do not obtain their own renters' insurance.  *Id.* at ¶¶ 45, 88 and 90.

Second, the Plaintiffs allege that the Defendants also made material misrepresentations and/or omissions in the Lease.  Specifically, the Plaintiffs allege that the Lease contains unlawful and unenforceable provisions that deceived and misled them into believing that:

> [T]hey (a) cannot negotiate their monthly rental rates or cannot negotiate the purchase prices of the home, while forcing them to sign agreements stating they in fact did, (b) must make repairs to their rental homes that are not the tenants' responsibility, (c) must pay for renters' insurance or use Defendants' hand-picked 'liability coverage' every month to cover the maintenance of and physical damage to Defendants' rental homes, (d) representing to consumers that they take the property 'AS IS' and must make and pay for maintenance and repairs to Defendants' rental homes, when the law requires that Defendants, not tenants, keep the homes in compliance with applicable health and safety laws, and (e) must pay for other lease administration fees such as the HVAC filter fee, UBSF, Defendants' attorneys' legal fees.

*Id.* at ¶ 137.  The Plaintiffs further allege that the Defendants violated the MCPA by misleading them regarding the nature, characteristics and benefits of certain fees required under the Lease, including the Master Resident Liability Program Fee ("MRLPF"), the Utility Billing Service Fee ("UBSF"), the HVAC Filter Fee ("HVACFF") and the Legal Service Fee ("LSF").  *Id.* at ¶¶ 140-41.

To show that they relied upon the Defendants' alleged misrepresentations and/or omissions, the Plaintiffs allege that they either, would not have rented a home from the Defendants, or would have paid significantly reduced rent for their home, if they had "known the truth and true value" of the Defendants' rental properties.  *Id.* at ¶¶ 143 and 147.  To show that they suffered injury and damages as a result of the Defendants' alleged misrepresentations and/or omissions, the Plaintiffs also allege that they were injured, because they were "induced to make payments to Defendants in excess of what is legal."  *Id.* at ¶¶ 147 and 149.

With regards to the Plaintiffs' Section 8-208 claim in Count II of the complaint, the Plaintiffs allege that the Lease contains several provisions that violate Section 8-208, because the Lease requires that: (1) tenants waive a trial by jury; (2) tenants waive rights and remedies provided by Maryland law; (3) tenants indemnify the landlord from liability for the landlord's

own acts, omissions or neglect; (4) tenants waive the warranty of habitability; and (5) tenants pay a penalty for the late payment of rent in excess of five percent of the amount of rent due. *Id*. at ¶¶ 100, 153. To show that they have incurred damages due to these alleged Section 8-208 violations, the Plaintiffs allege that the Defendants have: (1) attempted to collect, and collected, penalties related to the late payment of rent in excess of five percent of the amount of rent due; (2) misallocated payments intended as rent to non-rent and/or other charges first; (3) not allowed the Plaintiffs to pay rent unless other charges and fees are also paid; and (4) attempted to terminate the Lease and refused to accept payment of rent. *Id*. at ¶¶ 112, 115-16 and 154.

In addition, the Plaintiffs allege that the Defendants have also violated Section 8-211, because the Defendants failed to remedy certain defective conditions in the Plaintiffs' home within a reasonable time. *Id*. at ¶¶ 162-63. Lastly, in Counts IV, V, VI, VII and VIII of the complaint, the Plaintiffs allege that: (1) the Defendants breached the duty of good faith and fair dealing, by refusing to perform their contractual duties under the Lease; (2) the Lease should be rescinded, because it is an unconscionable contract of adhesion and unenforceable; (3) they conferred a benefit on the Defendants by, among other things, paying rent and for certain maintenance costs that Defendants should have paid; (4) they are entitled to entry of declaratory judgment under 28 U.S.C. § 2201; and (5) they are entitled to certain injunctive relief. *Id*. at ¶¶ 173-74, 180-84, 186-88, 192 and 196-97. And so, the Plaintiffs request, among other things, that the Court enjoin the Defendants from engaging in the alleged unfair and deceptive practices and award them monetary damages, attorneys' fees and costs. *Id*. at Prayer for Relief.

### B.  Procedural History

On December 22, 2023, the Plaintiffs commenced this putative class action. ECF No. 1. On March 27, 2024, the Defendants filed a motion to dismiss, pursuant to Fed. R. Civ. P 12(b)(6), and a memorandum in support thereof. ECF No. 27.

On April 29, 2024, the Plaintiffs filed a response in opposition to the Defendants' motion to dismiss. ECF No. 45. On May 28, 2024, the Defendants filed a reply brief. ECF No. 51. On July 23, 2024, and November 20, 2024, respectively, the Defendants filed notices of supplemental authority in support of their motion to dismiss. ECF Nos. 53, 55. On November 26, 2024, the Plaintiffs filed a notice of supplemental authority and a response to the Defendants'

second notice of supplemental authority and the Defendants filed a response to the Plaintiffs'
notice of supplemental authority. ECF Nos. 56, 57 and 58.

The Defendants' motion to dismiss having been fully briefed, the Court resolves the
pending motion.

## III.    LEGAL STANDARDS

### A.  Fed. R. Civ. P. 12(b)(6) And 9(b)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege
enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the
plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the
Court accepts the factual allegations in the complaint as true and construes them in the light most
favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253
(4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir.
2005) (citations omitted). But, the complaint must contain more than "legal conclusions,
elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ."
*Nemet Chevrolet, Inc.*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for
failure to state a claim if "it is clear that no relief could be granted under any set of facts that
could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v.
Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229,
249-50 (1989)).

In addition, Rule 9(b) of the Federal Rules of Civil Procedure provides that fraud claims
require greater specificity and that a plaintiff "must state with particularity the circumstances
constituting fraud." Fed. R. Civ. P. 9(b); *see also Spaulding v. Wells Fargo Bank*, 920 F. Supp.
2d 614, 622 (D. Md. 2012), *aff'd*, 714 F.3d 769 (4th Cir. 2013) (applying Rule 9(b) to MCPA
claim). Given this, "a plaintiff alleging fraud must make particular allegations of the time, place,
speaker, and contents of the allegedly false acts or statements." *Adams v. NVR Homes, Inc.*, 193
F.R.D. 243, 249-50 (D. Md. 2000); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
525 F.3d 370, 379 (4th Cir. 2008) (stating that the facts a plaintiff must plead in support of a

fraud claim "are often 'referred to as the who, what, when, where, and how' of the alleged fraud" claim) (citation omitted); *Weidman v. Exxon Mobile Corp.*, 776 F.3d 214, 219 (4th Cir. 2015). The Court should, however, "hesitate to dismiss a fraud claim if it finds (1) that the defendant[s] [have] been made aware of the particular circumstances for which [they] will have to prepare a defense at trial, and (2) that plaintiff[s] ha[ve] substantial pre-discovery evidence of those facts." *Nat'l Mortg. Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 505 (D. Md. 2002) (citations and internal quotation marks omitted).

### B.  The MCPA

The Maryland Consumer Protection Act prohibits "unfair . . . or deceptive trade practice[s]." Md. Code Ann., Com. Law § 13-303.  Under Maryland law, a private party bringing a claim under the MCPA must demonstrate: (1) an unfair or deceptive practice or misrepresentation; (2) that is relied upon; and (3) causes them actual injury.  *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citation omitted).  In this regard, the MCPA defines an unfair or deceptive trade practice as: "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;" and "[f]ailure to state a material fact if the failure deceives or tends to deceive."  Md. Code Ann., Com. Law § 13-301(1), (3); *see Marshall v. James B. Nutter & Co.*, 816 F. Supp. 2d 259, 266 (D. Md. 2011) (explaining that "the MCPA prohibits both the use of false or misleading statements and also the omission of material facts").  "A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice."  *Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 477 (D. Md. 2022), *aff'd*, 2023 WL 3053017 (4th Cir. Apr. 24, 2023) (quoting *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013)); *see also Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 535 (D. Md. 2011)( "[A] consumer relies on a material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information.").

In addition, a "[plaintiff] must prove actual loss or injury caused by the" unfair or deceptive practice.  *Galola v. Snyder*, 613 A.2d 983, 985 (Md. 1992) (holding that a tenant who rented a property that was not licensed as required by law needed to show actual damage or injury from the lack of the licensure); *Citaramanis v. Hallowell*, 613 A.2d 964, 971 (Md. 1992) (holding that there are no statutory or nominal damages under the MCPA).  And so, the damages

for a MCPA violation must be "identifiable" and "measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 621 (D. Md. 2014) (quoting *Green v. Wells Fargo Bank, N.A.*, 2014 WL 360087, at *3 n.3 (D. Md. Jan. 31, 2014)).

### C.  Sections 8-208 And 8-211 Of The Maryland Real Property Code

Section 8-208 of the Maryland Real Property Code requires that a landlord who offers five or more dwellings for rent in Maryland use a written lease and establishes requirements for what such leases must and must not contain. *See generally* Md. Code Ann., Real Prop. § 8-208. In this regard, the statute requires that a landlord may not use a lease, or form of lease, containing any provision that:

> (2) Has the tenant agree to waive or to forego any right or remedy provided by applicable law;
>
> (3) . . .
>> (i) Provides for a penalty for the late payment of rent in excess of 5% of the amount of rent due for the rental period for which the payment was delinquent;
>
> (4) Has the tenant waive the right to a jury trial; without the benefit of formal legal process;
>
> [. . .]
>
> (7) Is against public policy and void under § 8-105 of this title;
>
> (8) Permits a landlord to commence an eviction proceeding or issue a notice to quit solely as retaliation against any tenant for planning, organizing, or joining a tenant organization with the purpose of negotiating collectively with the landlord; [or]
>
> (9) Requires the tenant to accept notice of rent increases under § 8-209 of this subtitle or § 8-401 of this title by electronic delivery . . .

*Id*. at § 8-208(d) (2-4, 7-9).  To prove a Section 8-208(d) violation, a plaintiff must first show that his or her lease contains a proscribed term. *Id*. at § 8-208(d), (g)(1-2).  A plaintiff must also show "actual damages incurred as a reason thereof." *Id*. at § 8-208(g)(2); *see also Sager v. Housing Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 548 (D. Md. 2012) (noting that Section 8-208(g) "only" permits recovery of "actual damages incurred").

Section 8-211 of the Maryland Real Property Code "provides a remedy and imposes an obligation on landlords to repair and eliminate conditions and defects which constitute, or if not promptly corrected will constitute, a fire hazard or a serious and substantial threat to the life,

11

health, or safety of occupants." Md. Code Ann. Real Prop., § 8-211(d). Such conditions include: (1) a lack of heat, light, electricity, or hot or cold running water, except where the tenant is responsible for the payment of the utilities and the lack thereof is the direct result of the tenant's failure to pay the charges; (2) lack of adequate sewage disposal facilities; (3) infestation of rodents in two or more dwelling units; (4) the existence of any structural defect which presents a serious and substantial threat to the physical safety of the occupants; or (5) the existence of any condition which presents a health or fire hazard to the dwelling unit. *Id*. at § 8-211(d)(1-5).

Section 8-211 also creates "an affirmative cause of action for a tenant," where the tenant follows the procedure prescribed in the statute. *Velicky v. Copycat Bldg. LLC*, 264 A.3d 661, 676 (Md. 2021). In this regard, the statute requires that the tenant notify the landlord in writing of any defects or conditions described in Section 8-211, and that the tenant provide the landlord with a reasonable time after receipt of notice to make repairs or correct the conditions. Md. Code Ann., Real Prop. § 8-211(f), (g). And so, if the landlord "refuses to make the repairs or correct the conditions," or fails to do so "within a reasonable amount of time," the tenant may "bring an action of rent escrow to pay rent into court because of the asserted defects or conditions." *Id*. at § 8-211(h)(1)(i).

### D.  Rescission, Unjust Enrichment And Declaratory And Injunctive Relief

Lastly, Maryland courts have long recognized that:

> When a contracting party is displeased with the other's performance he may follow either of two alternative courses of action, if under the facts they are open to him: (l) he can reaffirm the existence of the contract and seek specific performance when appropriate or claim damages for its breach, or (2) he can repudiate the contract altogether and request rescission.

*Lazorcak v. Feuerstein,* 327 A.2d 477, 480 (Md. 1974) (citing *Kemp v. Weber*, 24 A.2d 779, 780 (Md. 1942)). A party seeking to rescind a contract "must demonstrate he acted promptly after discovery of the ground for rescission," and "[h]e must also show that he tendered to [the other party] all consideration and benefits received under the contract immediately after notice of the ground for rescission." *Finch v. Hughes Aircraft Co*., 469 A.2d 867, 894 (Md. 1984) (citations omitted). And so, if the contract is rescinded, the aggrieved party must return its benefits and receive back its expenditures. *Lazorcak*, 327 A.2d at 481.

To state a claim of unjust enrichment under Maryland law, a plaintiff must show: "(1) [a] benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Doe v. Gormley*, 2016 WL 4400301, at *7 (D. Md. Aug. 17, 2016) (citing *County Comm'rs v. J. Roland Dashiell & Son, Inc.*, 358 Md. 83, 95 (2000)). "It is settled law in Maryland . . . that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 608 (Md. 2000) (quoting *FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998)); *see also Jaigobin v. U.S. Bank, NA*, 2019 WL 4598000, at *7 (D. Md. Sept. 23, 2019). But, there are exceptions to this rule, when: (1) there is evidence of fraud or bad faith; (2) there has been a breach of contract or a mutual rescission of the contract; (3) when rescission is warranted; or (4) when the express contract does not fully address a subject matter. *Cnty. Comm'rs of Caroline Cnty.*, 747 A.2d at 609 (internal citations omitted).

This Court has held that the Declaratory Judgment Act, 28 U.S.C. § 2201, "provides a remedy in cases otherwise in the Court's jurisdiction; [but] it does not create an independent cause of action." *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 752 (D. Md. 2020) (quoting *Elec. Motor & Contracting Co., Inc. v. Travelers Indem. Co. of Am.*, 235 F. Supp. 3d 781, 793 (E.D. Va. 2017)). This Court has also held that injunctive relief and breach of the implied contractual duty of good faith and fair dealing are not independent causes of action. *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481, 493 (D. Md. 2015); *Tate v. Am. Gen. Life Ins. Co.*, 627 F. Supp. 3d 480, 493 (D. Md. 2022) ("'Maryland does not recognize an independent cause of action for breach of the implied contractual duty of good faith and fair dealing.'") (internal citations omitted).

## IV.    ANALYSIS

The Defendants have moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6), upon the following four grounds. First, the Defendants argue that the Plaintiffs fail to plead the elements of their MCPA claim in the complaint, because the terms of the Lease and the other alleged misrepresentations and/or omissions attributed to the Defendants are not unfair or deceptive and the Plaintiffs do not allege facts to show reliance, or that the alleged

misrepresentations and/or omissions by the Defendants caused them injury.  ECF No. 27 at 13-28.  Second, the Defendants argue that the Plaintiffs fail to state a claim under Section 8-208, because the challenged terms of the Lease are not proscribed by that statute and the Plaintiffs fail to allege facts to show actual damages.  *Id*. at 28-31.

Third, the Defendants argue that the Plaintiffs also fail to state a claim under Section 8-211, because the Plaintiffs do not allege that they satisfied the conditions for bringing a claim under that statute.  *Id*. at 31-32.  Lastly, the Defendants argue that the Court should dismiss the Plaintiffs' common law claims, because: (1) they do not plead the elements of rescission; (2) they fail to state a claim for unjust enrichment; and (3) their claims for breach of the duty of good faith and fair dealing, declaratory relief and injunctive relief are not standalone causes of action.  *Id*. at 32-35.  And so, the Defendants request that the Court dismiss the complaint.  *Id*. at 35.

In their response in opposition to the Defendants' motion to dismiss, the Plaintiffs counter that the Court should not dismiss their claims, because they have adequately alleged the claims in this case.  ECF No. 45.  In the alternative, the Plaintiffs request leave to amend the complaint to the extent that the Court disagrees.  *Id*. at 38.  And so, the Plaintiffs request that the Court deny the Defendants' motion to dismiss.  *Id*.

For the reasons that follow, a careful reading of the complaint shows that the Plaintiffs have not plead sufficient factual allegations to support the elements of their MCPA claim.  A careful reading of the complaint also shows that the Plaintiffs have not alleged sufficient facts to state plausible claims under Section 8-208 and Section 8-211 of the Maryland Real Property Code.

In addition, a careful reading of the complaint makes clear that the Plaintiffs do not state plausible claims for rescission, unjust enrichment, breach of the duty of good faith and fair dealing, declaratory relief and injunctive relief in the complaint.  Lastly, the Plaintiffs have not shown that leave to amend the complaint is warranted.  And so, the Court: (1) GRANTS the Defendants' motion to dismiss and (2) DISMISSES the complaint.

### A. The Court Dismisses The Plaintiffs' State Law Claims

As an initial matter, the Defendants argue with persuasion that the Court should dismiss the Plaintiffs' state common law claims for breach of the duty of good faith and fair dealing,

14

recission, unjust enrichment, declaratory relief and injunctive relief.  ECF No. 27 at 32-35.  In the complaint, the Plaintiffs allege claims against the Defendants for: (1) breach of the duty of good faith and fair dealing (Count IV); (2) rescission (Count V); (3) unjust enrichment (Count VI); (4) declaratory relief (Count VII); and (5) injunctive relief (Count VIII).  *See generally* ECF No. 1.  These claims are not plausible for several reasons.

First, a careful reading of the complaint shows that the Plaintiffs do not allege sufficient facts to establish the elements of their rescission claim.  Maryland courts have held that "a party seeking to rescind a contract 'must demonstrate he acted promptly after discovery of the ground for rescission,' and '[h]e must also show that he tendered to [the other party] all consideration and benefits received under the contract immediately after notice of the ground for rescission.'"  *Finch v. Hughes Aircraft Co.*, 469 A.2d 867, 894 (Md. 1984) (citations omitted).  The Plaintiffs allege in the complaint that the Lease should be rescinded, because it contains illegal terms.  ECF No. 1 at ¶¶ 176-84.  But the complaint lacks facts to show when the Plaintiffs became aware of the alleged illegal terms in the Lease to satisfy the promptness element of their rescission claim.  *See Charter Oak Fire Ins. Co. v. Am. Cap., Ltd.*, 2011 WL 856374, at *14-15 (D. Md. Mar. 9, 2011) (dismissing rescission claim because the complaint "does not plead any facts explaining when Plaintiffs actually did become aware of Defendants' purported misrepresentations").

The complaint also lacks factual allegations to show that the Plaintiffs tendered, or attempted to tender, "all consideration and benefits received" under the Lease to the Defendants, or that the "limited circumstances" that could relieve the Plaintiffs from restoring the Defendants to their pre-contract state exist in this case.  *See* ECF No. 1 at ¶¶ 176-84; *Finch*, 469 A.2d at 894; *Lazorcak*, 327 A.2d at 481.  Given this, the Plaintiffs have not alleged facts to support the elements of their rescission claim.  And so, the Court must DISMISS this claim.

The Plaintiffs' unjust enrichment claim is also problematic.  Under Maryland law, a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties.  *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 608 (Md. 2000) (quoting *FLF, Inc. v. World Publications, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998)); *see also Jaigobin v. U.S. Bank, NA*, 2019 WL 4598000, at *7 (D. Md. Sept. 23, 2019).  Here, the Plaintiffs allege that their unjust enrichment claim is based upon a benefit that they conferred on the Defendants by paying rent and for the costs of maintenance that the Defendants should have paid for under the terms of the Lease.  ECF

No. 1 at ¶ 186.  As the Defendants correctly observe, and the Plaintiffs do not dispute, the Lease expressly addresses these subjects.  *See generally* ECF No. 47; *see also* ECF No. 1-6 at 10, 16-17 (¶¶ 4 (payment of rent) and 16 (maintenance and repair)).  The complaint also lacks facts to show that one of the exceptions to the rule that unjust enrichment claims cannot be brought when the subject matter of the claim is covered by an express contract applies in this case.  Notably, the complaint does not allege any facts to show that: (1) there is evidence of fraud or bad faith; (2) there has been a breach of contract or a mutual rescission of the contract; (3) rescission is warranted; or (4) the express contract does not fully address a subject matter.  *See* ECF No. 1 at ¶¶ 185-189; *see also Cnty. Comm'rs of Caroline Cnty.*, 747 A.2d at 609 (internal citations omitted).  Given this, the Plaintiffs' unjust enrichment claim is precluded.  And so, the Court also DISMISSES this claim.

Lastly, the Defendants also persuasively argue that the Court should dismiss the Plaintiffs' claims for breach of good faith and fair dealing, declaratory relief and injunctive relief, because these claims are not standalone causes of action under Maryland law.  As this Court has held, the Declaratory Judgment Act, 28 U.S.C. § 2201, "provides a remedy in cases otherwise in the Court's jurisdiction; [but] it does not create an independent cause of action." *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 3d 742, 752 (D. Md. 2020) (quoting *Elec. Motor & Contracting Co., Inc. v. Travelers Indem. Co. of Am.*, 235 F. Supp. 3d 781, 793 (E.D. Va. 2017)).  This Court has also long held that injunctive relief and breach of the implied contractual duty of good faith and fair dealing are not independent causes of action.  *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481, 493 (D. Md. 2015); *Tate v. Am. Gen. Life Ins. Co.*, 627 F. Supp. 3d 480, 493 (D. Md. 2022).  Given this, the Plaintiffs cannot pursue standalone claims for declaratory relief, injunctive relief and breach of the duty of good faith and fair dealing in this civil action.  And so, the Court also DISMISSES these claims.

### B.  The Plaintiffs Fail To State A MCPA Claim

The Defendants also argue with persuasion that the Plaintiffs fail to state a plausible MCPA claim in the complaint.  To state a claim pursuant to the MCPA, the Plaintiffs must allege facts to show: (1) an unfair or deceptive practice or misrepresentation; (2) that is relied upon; and (3) causes them actual injury.  *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012) (citation omitted).  In this regard, the MCPA defines an unfair or deceptive trade practice as: a "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other

representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" and a "[f]ailure to state a material fact if the failure deceives or tends to deceive." Md. Code Ann., Com. Law § 13-301(1), (3); *see Marshall v. James B. Nutter & Co.*, 816 F. Supp. 2d 259, 266 (D. Md. 2011) (explaining that "the MCPA prohibits both the use of false or misleading statements and also the omission of material facts"). This Court has held that "[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 477 (D. Md. 2022), *aff'd*, No. 22-2017, 2023 WL 3053017 (4th Cir. Apr. 24, 2023) (quoting *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013)).

In addition, Maryland courts have held that a "[plaintiff] must prove actual loss or injury caused by the" unfair or deceptive practice to prevail on a claim brought under the MCPA. *Galola v. Snyder*, 613 A.2d 983, 985 (Md. 1992) (holding that a tenant who rented a property that was not licensed as required by law needed to show actual damage or injury from the lack of the licensure); *Citaramanis v. Hallowell*, 613 A.2d 964, 971 (Md. 1992) (holding that there are no statutory or nominal damages under the MCPA). And so, for the Plaintiffs to recover under the MCPA in this case, their damages must be "identifiable" and "measured by the amount [they] spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 621 (D. Md. 2014) (quoting *Green v. Wells Fargo Bank, N.A.*, 2014 WL 360087, at *3 n.3 (D. Md. Jan. 31, 2014)).

### 1.    The Plaintiffs Do Not Allege Facts To Show An Unfair Or Deceptive Practice Or Misrepresentation

The Plaintiffs allege that the Defendants made two types of material misrepresentations and/or omissions that violate the MCPA: (1) material misrepresentations and/or omissions through the Defendants' marketing and advertising materials and (2) material misrepresentations and/or omissions in the terms of the Lease. *See* ECF No. 1 at ¶¶ 26-56, 57-95. As an initial matter, the Court agrees with the Defendants that the Plaintiffs have not alleged sufficient facts to identify an unfair or deceptive practice, or any material misrepresentations and/or omissions, with regards to their marketing and advertisement for the Rent-to-Purchase Program to support their MCPA claim.

In this regard, the Plaintiffs allege that the Defendants' marketing and advertising materials are unfair and deceptive, because: (1) the Defendants represented that "they expend

significant effort and resources to purchase a particular home on the prospective tenant's behalf[;]" (2) the Defendants represent that the homes available for rent are "[p]rofessionally managed by Pathlight Property Management, the exclusive property manager for Home Partners of America, offering excellent customer service, 24/7 emergency maintenance service, online application and payments, and pet-friendly options[;]" (3) the Defendants represented that the homes are "qualified," "move-in ready" and have passed inspection; and (4) the Defendants failed to disclose that the Plaintiffs may be "force-placed into the Defendants' own insurance if they do not obtain their own renters' insurance" and to disclose "the nature and purpose" of the UBSF. *Id.* at ¶¶ 42-45, 88-90.  And so, the Plaintiffs maintain that these alleged misrepresentations and/or omissions "falsely assure prospective tenants that they will not be undertaking onerous obligations under the leases" and, on that basis, "have the capacity to deceive." *Id.* at ¶ 136.

But, the complaint makes clear that many of the marketing and advertising statements that the Plaintiffs cite are mere puffery that is not actionable under the MCPA.  ECF No. 1 at ¶¶ 1, 43; *see also Dean v. Beckley*, 2010 WL 3928650, at *4 (D. Md. Oct. 1, 2010) (noting that "broad and unspecific statements of opinions" are not actionable under the MCPA); *see also Milkton v. French*, 150 A. 28, 32 (Md. 1930) (holding that a statement about how a newly constructed house was "perfectly safe" was puffery because "[e]verybody knows a new house, as an old one, is never perfect in construction, but has the anticipated defects inherent to its period"). The Plaintiffs also argue that the Defendants failed to disclose the poor quality of their rentals or the maintenance burden on the Plaintiffs, misrepresented the UBSF in the Anticipated Terms document and made specific and measurable misleading claims in their marketing, when they stated that move-in occurs on average within two weeks of closing, that the Defendants will provide 24/7 emergency maintenance service and that an agent of the Defendant will facilitate the inspection of the home and make sure that all utilities are on.  ECF No. 45 at 8-9; *see also* ECF No. 1 at ¶¶ 42-45.  But, again, the complaint does not allege that any of these statements are false.  *See generally* ECF No. 1.  Nor does the complaint allege that the Plaintiffs were required to pay rent in an amount that was different than the "locked-in" rental rate provided for in the Lease.  *Id.*

18

The Plaintiffs' claim that the Defendants made misrepresentations regarding the quality of their rental properties also does not appear to be alleged in the complaint.[2]  *See* ECF No. 45 at 16; ECF No. 1.  And so, the allegations in the complaint, taken as true, do not show that the Defendants marketing and advertising statements are unfair or deceptive.  Md. Code Ann., Com. Law § 13-301(1), (3).

While a somewhat closer question, the Court also generally agrees with the Defendants that the Lease provisions that the Plaintiffs rely upon to support their MCPA claim are not unfair or deceptive.  The Plaintiffs allege that the Lease contains unlawful provisions that deceive and mislead consumers into believing that:

> [T]hey (a) cannot negotiate their monthly rental rates or cannot negotiate the purchase prices of the home, while forcing them to sign agreements stating they in fact did, (b) must make repairs to their rental homes that are not the tenants' responsibility, (c) must pay for renters' insurance or use Defendants' hand-picked 'liability coverage' every month to cover the maintenance of and physical damage to Defendants' rental homes, (d) representing to consumers that they take the property 'AS IS' and must make and pay for maintenance and repairs to Defendants' rental homes, when the law requires that Defendants, not tenants, keep the homes in compliance with applicable health and safety laws, and (e) must pay for other lease administration fees such as the HVAC filter fee, UBSF, Defendants' attorneys' legal fees.

*Id*. at ¶ 137.  And so, the Plaintiffs further allege that the Defendants have violated the MCPA by "mislead[ing] tenants as to [the] nature, characteristics and alleged benefits of the fees" for the MRLPF, UBSF, HVACFF and the LSF.  *Id*. at ¶¶ 140-41.

But, the Plaintiffs do not sufficiently allege facts in the complaint to show that the Lease contains provisions that are unfair or deceptive.  Notably, paragraph 16 of the Lease, which addresses maintenance and repairs and appears to apply to the Plaintiffs' claim, provides that:

> **MAINTENANCE AND REPAIR.**  Subject to the terms of this Section . . . , Landlord shall use reasonable efforts to maintain, at its cost . .. (2) any items which are required by Applicable Laws to be maintained by Landlord. . . .

---

[2] The Defendants also argue with some persuasion that the Anticipated Terms document is not misleading with regards to the UBSF, because it is undisputed that this fee is disclosed in that document.  ECF No. 27 at 21; ECF No. 45 at 17; ECF No. 51 at 8, 10.

ECF No. 1-6 at 16-17.  This provision appears to require that the Defendants pay for the maintenance of any items that are required to be paid for by the landlord under Maryland law. *Id.*  Given this, the Defendants argue with some persuasion that the Lease appropriately requires that the Defendants perform all maintenance and repairs required under Maryland law.[3]  ECF No. 27 at 15.

The Defendants also persuasively argue that the Lease's rent provision is neither unfair nor deceptive.  The Plaintiffs allege that the Lease is deceptive, because: (1) the Defendants "misleadingly state that the tenants' rental rates were negotiated and would otherwise be higher but for the tenants' alleged agreement to maintain and repair[;]" (2) the Defendants "state and admit they do not negotiate these amounts with tenants[;]" and (3) they were not provided an opportunity to negotiate the amount of rent.  ECF No. 1 at ¶¶ 6, 51 and 101.  While the Lease does state that the rent was "agreed upon" by the parties, the Court does not read the Lease to otherwise make any representations about whether or how the rent amount was negotiated.  ECF No. 1-6 at 17.  More importantly, there are no factual allegations in the complaint to show how the Plaintiffs were deceived about the amount of their rent.  *See generally* ECF No. 1.

The Plaintiffs also fail to allege facts in the complaint to show how the Lease provisions regarding fees for the MRLPF, UBSF and HVACFF are deceptive.  Notably, the Plaintiffs allege that: (1) the "Defendants induce tenants to enroll in the MRLP by telling them that using an outside insurance provider could cost them $20 a month or more, 'despite the fact that the [MRLP] does not cover the tenant's personal property[;]'" (2) the MRLP "has made Defendants a lot of money[;]" and (3) they have paid the $13 monthly fee for the MRLP.  ECF No. 1 at ¶¶ 86, 105, 140.  But, taken as true, these allegations simply do not show that the Defendants *misled* the Plaintiffs about the "nature, characteristics and alleged benefits" of the MRLPF.  The Plaintiffs also allege that the Defendants misled them about the UBSF, because the Lease does not disclose that, "[i]n actuality, the UBSF is a fee Defendants assess to tenants to cover the administrative costs of hiring Conservice to bill tenants for utilities."  *Id*. at ¶¶ 90, 103 (alleging that the Lease "is silent as to the nature and purpose of this fee."); *see also* ECF No. 1-6 at 13, ¶

---

[3] While neither the Fourth Circuit nor Maryland courts have directly considered whether an "applicable laws" catch-all provision can shield a defendant from liability under the MCPA, the Court does not need to reach this issue in order to decide the Defendants' motion, because, as discussed below, the Plaintiffs also fail to allege sufficient facts to support the other elements of their MCPA claim.

6 (mentioning the UBSF). But, a plain reading of the Lease makes clear that the Lease discloses the amount of the UBSF and also states that this fee is "for reimbursement" for utility billing services. ECF No. 1-6 at 13, ¶ 6.

The Plaintiffs' allegations about the HVACFF are also insufficient. The Plaintiffs allege that the Lease's provisions regarding the HVACFF are deceptive, because the Lease shifts the cost of maintaining the habitability of the property to tenants. ECF No. 1 at ¶¶ 92, 104, 140(c); *see also* ECF No. 1-6 at 28 (listing "Furnace/HVAC - supply and change heating and air conditioning at least once a month" under "Tenants' responsibility and expense"); ECF No. 1-6 at 47-49 ("Air Filter Addendum"). But, again, the Plaintiffs' allegations, taken as true, are not sufficient to show that the Lease is deceptive, because the parties agree that the purpose of the fee is disclosed in the Lease. *See* ECF No. 1-6 at 47-49.

Lastly, the Plaintiffs allege in the complaint that the Lease's LSF provisions violate the MCPA, because the Defendants can assess legal fees on their tenants regardless of whether the Defendants actually prevail on, or even bring, an eviction action. ECF No. 1 at ¶¶ 94-95, 141(d). But, to the extent that this is true, the Plaintiffs do not allege that they paid any legal fees under the Lease in this case. Given this, the Plaintiffs lack standing to bring this claim. *See Citaramanis*, 613 A.2d at 971 ("[T]he [MCPA] requires a showing of actual "loss or injury" to entitle a person to recover[.]" And so, at bottom, the Plaintiffs simply have not sufficiently alleged facts to show that the Defendants made unfair, deceptive, or misleading statements and/or omissions regarding the Rent-to-Purchase Program in the complaint. Fed. R. 12(b)(6).

### 2.    The Plaintiffs Do Not Allege Facts To Show Reliance

Even if the Court accepts that the Plaintiffs have identified misrepresentations and/or omissions that are actionable under the MCPA, their MCPA claims must still fail, because the complaint lacks sufficient factual allegations to show that the Plaintiffs relied upon any of these misrepresentations and/or omissions in deciding to enter into the Lease. As this Court has held, "[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice." *Bryant*, 627 F. Supp. 3d at 477 (quoting *Currie*, 950 F. Supp. 2d at 796). The Court has also held that "a consumer relies on a material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information." *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 535 (D. Md. 2011).

In this case, the Plaintiffs do not allege sufficient facts to show that they relied upon any of the Defendants' alleged misrepresentations and/or omissions in deciding whether to enter into the Lease. In this regard, the Plaintiffs allege in the complaint that they relied upon the Defendants' misrepresentations and/or omissions about the quality and standard of their rental properties and rental practices when selecting the home they would rent. ECF No. 1 at ¶ 145. And so, the Plaintiffs contend that they either, would not have rented a home through the Rent-to-Purchase Program from Defendants, or they would have paid significantly reduced rent for their home, if they had "known the truth and true value" of Defendants' rental properties. *Id*. at ¶ 147.

But, there are no facts in the complaint to show that the Plaintiffs actually saw or read any of the Defendants' marketing and advertising statements before they decided to enter into the Lease. *See id*. at ¶¶ 26-56 (explaining the Defendants' marketing), 96-98 (explaining the Plaintiffs' entry into the Lease). Nor do the Plaintiffs allege facts to show when they received and reviewed the Anticipated Terms document, to show how they could have relied upon any statements contained in that document prior to signing the Lease. *See id*. at ¶¶ 45 (discussing Anticipated Terms document), 96-98 (explaining the Plaintiffs' entry into the Lease). Given this, the factual allegations in the complaint are not sufficient to show that the Defendants' alleged misrepresentations induced the Plaintiffs to enter into the Lease. *Bryant*, 627 F. Supp. 3d at 477.

The Plaintiffs similarly fail to allege facts to show that they relied upon the Defendants' alleged omissions regarding the Rent-to-Purchase Program and the Lease. The complaint lacks any facts to show how the Defendants' purported omissions about their rental properties would have impacted the Plaintiffs' decision to enter into the Lease, or how any of the allegedly omitted information would have created a basis for the Plaintiffs to pay a reduced rent. *See generally* ECF No. 1. Given this, the factual allegations in the complaint are also not sufficient to show that it was substantially likely that the Plaintiffs would have chosen not to enter into the Lease if the Defendants had disclosed the omitted information. *Jill P. Mitchell Living Trust*, 822 F. Supp. 2d at 535.

### 3.    The Plaintiffs Do Not Allege Facts To Show Actual Injury

Lastly, a careful reading of the complaint also makes clear that the Plaintiffs do not allege facts to show that the Defendants' alleged misrepresentations and/or omissions caused them actual injury, to satisfy the final element of their MCPA claim.  As Maryland courts have held, a "[plaintiff] must prove actual loss or injury caused by the" unfair or deceptive practice, to prevail on a claim brought under the MCPA.  *Galola*, 613 A.2d at 985 (holding that a tenant who rented a property that was not licensed as required by law needed to show actual damage or injury from the lack of the licensure); *Citaramanis*, 613 A.2d at 971 (holding that there are no statutory or nominal damages under the MCPA).  And so, the Plaintiffs' damages in this case must be "identifiable" and measured by the amount they spent or lost as a result of their reliance on the Defendants' misrepresentations. *Chambers*, 43 F. Supp. 3d at 621 (quoting *Green*, 2014 WL 360087, at *3 n.3).

But, here, the complaint makes clear that the Plaintiffs have not plead facts to show an actual loss or injury caused by the Defendants' alleged misrepresentations and/or omissions. While the Plaintiffs allege that they would either have not rented a home from the Defendants, or paid a significantly reduced rent, if they been aware of Defendants' misrepresentations and/or omissions, the Plaintiffs do not allege any facts to show the amount of money they have lost due to the Defendants' alleged misrepresentations and/or omissions.  *See* ECF No. 1 at ¶ 147.  Nor do the Plaintiffs support their allegation that the sums they paid under the Lease "excee[ded] . . . what was legal" with any facts.  *Id.* at ¶ 149.

The Plaintiffs similarly fail to allege facts to show how the Defendants' alleged misrepresentations and/or omissions caused any of the maintenance issues alleged in the complaint.  *See id*. at ¶¶ 106-14 (discussing maintenance issues at the Plaintiffs' home).  Nor do they allege facts to show the amount of money that they lost or spent because of these maintenance issues.  *See id*.  Given this, the Plaintiffs have not sufficiently alleged facts to satisfy the damages element of their MCPA claim.

Because the Plaintiffs fail to allege sufficient facts in the complaint that, taken as true, would establish the elements of their MCPA claim, the Court must DISMISS this claim.  Fed. R. Civ. P. 12(b)(6).

### C. The Plaintiffs Fail To State Plausible Claims Under Sections 8-208 And 8-211

Turning to the Plaintiffs' claims brought under the Maryland Real Property Code, a careful reading of the complaint also makes clear that the Plaintiffs do not plausibly allege claims under these statutes.

First, the Plaintiffs fail to allege facts to show damages to support their Section 8-208 claim. To prove their Section 8-208 claim, the Plaintiffs must show that the Lease contains a term proscribed by that statute and that actual damages were incurred as a reason of the inclusion of the proscribed term. Md. Code Ann., Real Prop. § 8-208(d), (g)(1-2); *see also Sager v. Housing Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 548 (D. Md. 2012) (noting Section 8-208(g) "only" permits recovery of "actual damages incurred"). In the complaint, the Plaintiffs allege that the Lease violates Section 8-208, because it contains, among other things, terms that require tenants to: (1) waive a trial by jury; (2) waive rights and remedies provided by Maryland law; (3) indemnify the landlord from liability for the landlord's own acts, omissions or neglect; (4) waive the warranty of habitability; and (5) provide for a penalty for the late payment of rent in excess of five percent of the amount of rent due for the rental period for which the payment was delinquent. ECF No. 1 at ¶¶ 100, 153. The Plaintiffs also allege that they have incurred damages due to these violations, because: (1) the Defendants attempted to terminate their Lease; (2) the Defendants will not accept their rent payment; and (3) they had no opportunity to negotiate the rent amount under the Lease. *Id.* at ¶¶ 112, 115-16, 156-57. But, as the Defendants correctly observe, the complaint is devoid of any factual allegations to show that the Plaintiffs' receipt of a notice of the termination of the Lease, or their inability to negotiate the Lease's terms, resulted in actual damages. *See generally* ECF No. 1.

Given this, the complaint lacks facts to show that the Plaintiffs incurred actual damages to state a plausible Section 8-208 claim. And so, the Court must DISMISS this claim.

As the Plaintiffs appear to acknowledge, their Section 8-211 claim is also problematic, because the complaint lacks facts to show that they have satisfied the procedural requirements for bringing this claim. Before bringing a claim under Section 8-211, the Plaintiffs must notify the landlord in writing of any defects or conditions described in that statute and provide the landlord with a reasonable time after receipt of notice to make repairs or correct the conditions. Md. Code Ann., Real Prop. § 8-211(f), (g). If the landlord "refuses to make the repairs or correct the conditions," or fails to do so "within a reasonable amount of time," the Plaintiffs may

"bring an action of rent escrow to pay rent into court because of the asserted defects or conditions" and the Plaintiffs must pay the rent amount in question into court. *Id.* § 8-211(h)(1)(i), (k).

Here, the Plaintiffs maintain that they have alleged facts to show that they provided notice of any defects or conditions at their home to the Defendants, and they seek leave to amend the complaint to address the remaining requirements of Section 8-211. ECF No. 45 at 28. The Plaintiffs do not, however, explain how their proposed amendments would cure the deficiencies noted above. *Id.* There is also no dispute that the Plaintiffs have not paid rent into the Court before commencing this action as required by Section 8-211.[4] *See* ECF No. 1 at ¶¶ 96-115, 159-64. And so, the Court also DISMISSES this claim.

### D. The Plaintiffs Have Not Shown That Leave To Amend Is Warranted

The Court must also decline to grant the Plaintiffs leave to amend complaint to address the other deficiencies identified by the Court. Fed. R. Civ. P. 15(a)(2) provides that, when a party cannot amend a pleading by right, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). While the Court "should freely" grant leave to amend "when justice so requires," the Court should deny a party leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *See* Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman*, 371 U.S. at 182). And so, the Court should deny a motion for leave to amend if "the proposed amendments could not withstand a motion to dismiss." *Cuffee v. Verizon Communications, Inc.*, 755 F. Supp. 2d 672, 677 (D. Md. 2010) (citation omitted). That is the circumstance presented here.

The Plaintiffs seek leave to amend the complaint to the extent that the Court finds the factual allegations in the complaint to be insufficient to state plausible claims. *See* ECF No. 45 at 38. But the Plaintiffs provide no information about the factual allegations that they would add

---

[4] In addition, the Court observes that the Plaintiffs also declined the Court's invitation to cure the deficiencies in their Section 8-211 claim prior to the briefing of the Defendants' motion to dismiss. *See* ECF No. 51 at 20. Given this, the Plaintiffs have not shown that leave to amend the complaint to address this claim is warranted.

to the complaint.  *See generally* ECF No. 45.  Nor do the Plaintiffs explain how their proposed amendment would remedy the deficiencies identified by the Court.  *Id*.  Given this, the proposed amendments appear to be futile and unable to withstand a renewed motion to dismiss.  And so, the Court declines to grant the Plaintiffs leave to amend the complaint.

## V.    CONCLUSION

In sum, a careful reading of the complaint shows that the Plaintiffs have not sufficiently alleged facts to support the elements of their MCPA claim.  A careful reading of the complaint also shows that the Plaintiffs have not alleged facts to state plausible claims under Section 8-208 and Section 8-211 of the Maryland Real Property Code.  In addition, the Plaintiffs fail to state plausible claims for breach of the duty of good faith and fair dealing, rescission, unjust enrichment and declaratory and injunctive relief in the complaint.  Lastly, the Plaintiffs have not shown that leave to amend the complaint is warranted.  And so, for the foregoing reasons the Court:

1. **GRANTS** the Defendants' motion to dismiss and

2. **DISMISSES** the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge